Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ELIZABETH NEGRÓN SOTO<br><br>PETICIONARIA<br><br>v.<br><br>LILIAN IVETTE NEGRÓN SOTO<br><br>RECURRIDA | TA2025CE00499 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2023RF01989<br><br>Sobre:<br>Declaración de Incapacidad y Tutela |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de octubre de 2025.

### I.

El 24 de septiembre de 2025, la señora Elizabeth Negrón Soto (peticionaria) presentó un recurso de *Certiorari* en el que nos solicitó que revoquemos la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario) el 22 de agosto de 2025, notificada y archivada digitalmente en autos el 25 de agosto de 2025.[1] Mediante dicho dictamen, el TPI declaró No Ha Lugar la *Moción de Reconsideración* con respecto a una solicitud de reembolso de gastos presentada por la peticionaria. A su vez, aclaró que el tribunal había autorizado que la incapaz pagara proporcionalmente de sus ingresos ciertos gastos del hogar donde se encuentra.

---

[1] Véase Entrada Núm. 124 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

El 29 de septiembre de 2025, emitimos una *Resolución* en la que concedimos a la recurrida hasta el 6 de octubre de 2025 para presentar su posición respecto a la expedición del recurso.[2]

El 6 de octubre de 2025, la señora Lillian Ivette Negrón Soto (recurrida) presentó un *Memorando en oposición a expedición del certiorari* en la que nos solicitó que deneguemos la expedición del recurso.[3]

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes a la atención de la petición de *certiorari*.

## II.

El caso de marras tuvo su génesis el 8 de noviembre de 2023, cuando la señora Elizabeth Negrón Soto radicó una *Petición* de declaración de incapacidad sobre su madre, la señora Julia Soto Berríos (incapaz o tutelada).[4] En esta alegó que la señora Julia Soto Berríos, por su condición de salud mental de esquizofrenia y demencia, no podía regir ni administrar su persona. Además, formuló unas alegaciones de explotación financiera por su hermana, la recurrida, sobre su madre. Por estas razones, la peticionaria solicitó la declaración de incapacidad de la señora Julia Soto Berríos y que, en consecuencia, se le designara como su tutora.

El 16 de enero de 2024, la recurrida presentó una *Contestación a Demanda & Reconvención* en la que negó la mayoría de las alegaciones hechas en su contra y presentó sus defensas afirmativas.[5] Mediante la reconvención, la recurrida solicitó que, de su madre ser declarada incapaz, se le designara a ésta como su tutora.

---

[2] Véase Entrada Núm. 2 del expediente digital del caso en SUMAC del Tribunal de Apelaciones (SUMAC-TA).
[3] Véase Entrada Núm. 3 del expediente digital del caso en SUMAC-TA.
[4] Véase Entrada Núm. 1 del expediente digital del caso en SUMAC-TPI.
[5] Véase Entrada Núm. 33 del expediente digital del caso en SUMAC-TPI.

Tras varios trámites procesales, innecesarios de pormenorizar para la atención del presente recurso, el 20 de mayo de 2024, el TPI dictó una *Sentencia* en la que declaró a la señora Julia Soto Berríos incapaz para administrar su persona y sus bienes, y nombró a la peticionaria, como su tutora legal.[6]

Mediante dicho dictamen, el TPI apercibió a la peticionaria sobre el cumplimiento con los deberes y obligaciones descritos en la referida *Sentencia* y sobre aquellos que se encuentran en los artículos 156 al 156 del Código Civil de 2020, 31 LPRA sec. 5311 *et. seq.* En cuanto a las cuentas bancarias de la incapaz, ordenó el cierre de dos, con el depósito de los fondos en el tribunal, y a mantener abierta la cuenta que recibe los ingresos recurrentes de la incapaz y de los cuales se rendirá cuenta al tribunal anualmente.

Por último, estableció las relaciones filiales de la recurrida con la incapaz.

Posteriormente, el 22 de mayo de 2025, la peticionaria presentó una *Moción al expediente judicial sometiendo informe[sic] anual de cuentas de tutela 2024/2025,* con la que anejó el Informe Anual de Tutela junto a otros documentos para su correspondiente evaluación y aprobación.[7] Con la presentación de dicho informe, la peticionaria solicitó el resarcimiento de los gastos incurridos por la residencia de la incapaz en su propiedad.

El 10 de junio de 2025, el TPI celebró una vista para discutir el informe de cuentas.[8] Surge de la *Minuta* que, luego de escuchar los argumentos de las partes, se le concedió un término de veinte (20) días a la peticionaria para presentar su solicitud en cuanto a la remuneración del cuido de la incapaz.

---

[6] Véase Entrada Núm. 88 del expediente digital del caso en SUMAC-TPI. Notificada y archivada digitalmente en autos el 28 de mayo de 2024. El 3 de junio de 2024 y notificada el 4 de junio de 2024, el TPI dictó una *Sentencia Nunc Pro Tunc* a los únicos efectos de corregir el horario de las relaciones filiales establecidas. Entrada Núm. 90 del expediente digital del caso en SUMAC-TPI.

[7] Véase Entrada Núm. 108 del expediente digital del caso en SUMAC-TPI.

[8] Véase Entrada Núm. 112 del expediente digital del caso en SUMAC-TPI.

Por consiguiente, el 18 de julio de 2025, la peticionaria presentó una *Moción en cumplimiento de orden y reiterando solicitud de reembolso de pagos por gastos de vivienda y pago reducido de cuido.*[9] En síntesis, indicó que la incapaz reside con ella y que, junto a su esposo, le suplen y brindan cuidado y atención las veinticuatro (24) horas del día, excepto cuando la incapaz comparte con su otra hija, la recurrida. Dado al tiempo diario que le dedican, alegó que éstos han limitado sus capacidades de trabajo para generar más ingresos. Ante esa situación, arguyó que no solicitaba una remuneración como tutora sino un pago reducido por el cuido de la incapaz, quien es su madre, brindado a tiempo completo, el cual de otro modo tendría que ser incurrido con proveedores privados que resultaría en costo mayor. Por lo antes dicho, la peticionaria solicitó una compensación reducida a razón de $15 la hora por, al menos, la mitad de las horas que emplea en el cuido de su madre, señalando que la incapaz cuenta con los fondos para el pago el mismo. Asimismo, reiteró la solicitud de reembolso de los gastos de vivienda incurridos por la incapaz.

El 23 de julio de 2025, la señora Lillian Negrón Soto presentó una *Moción en oposición a solicitud de reembolso de pagos por gastos de vivienda y pago reducido.* [10] Por su parte, expuso que la peticionaria aseveró durante los procedimientos que se hallaba capaz de ejercer la rogada tutela y que peticionó su nombramiento de tutora sin remuneración alguna. Además, adujo que el costo de vivienda de la peticionaria surge a raíz de un contrato de arrendamiento suscrito hace aproximadamente veinte (20) años, cuyos cánones permanecerían inalterados independientemente de si la incapaz reside o no en dicho inmueble. Asimismo, arguyó que, contrario a lo alegado por la peticionaria, la incapaz no cuenta con

---

[9] Véase Entrada Núm. 115 del expediente digital del caso en SUMAC-TPI.
[10] Véase Entrada Núm. 116 del expediente digital del caso en SUMAC-TPI.

fondos económicos suficientes para proceder con la remuneración solicitada. Por último, mencionó que ha expresado al tribunal su disposición para encargarse del cuido de su madre durante los fines de semana, en beneficio de todas las partes. Por ello, solicitó que la remuneración por concepto de cuido fuera denegada y se eliminara del informe anual los gastos por concepto de renta y mantenimiento.

El 4 de agosto de 2025, el TPI emitió una *Orden* en la que, tomando en cuenta las posiciones presentadas por las partes y lo informado en la vista sobre el informe anual 2024, no autorizó el reembolso solicitado por la peticionaria.[11] El foro primario resolvió que no procedía que se le adjudicara una porción del pago de la renta o hipoteca de la propiedad a la incapaz, independientemente de que ésta residiera allí. Pues concluyó que su estadía no encarecería la misma. No obstante, sí determinó razonable asignar, sujeto a la presentación de los correspondientes recibos, una cantidad por la participación de la incapaz para los gastos de agua y luz, de los fondos que ésta recibe de seguro social. Además, estableció que los gastos de luz, agua y áreas verdes de la propiedad de la incapaz debían ser sufragados de sus propios ingresos.

En cuanto al reclamo por costo de cuido, el TPI declaró No Ha Lugar. Mencionó que en la vista sobre declaración de incapacidad la peticionaria informó que no estaría recibiendo remuneración alguna por esta labor, por lo que se debió hacer el análisis de dicho gasto inicialmente. Además, instó a las partes a dialogar sobre la disposición de la recurrida para cuidar a su madre los fines de semanas, lo que le serviría de ayuda, si es una opción viable. Asimismo, aludió a que la responsabilidad del cuido y alimento de los padres recae sobre los hijos cuando los primeros no cuentan con recursos, responsabilidad que en este caso tendrían ambas partes.

---

[11] Véase Entrada Núm. 117 del expediente digital del caso en SUMAC-TPI.

Finalmente, aprobó el informe de tutela del año 2024, con las antedichas determinaciones sobre los reembolsos solicitados por la peticionaria.

Oportunamente, el 20 de agosto de 2025, la peticionaria presentó una *Moción de reconsideración* para que el TPI dejara sin efecto la *Orden* y autorizara el reembolso solicitado.[12] En esta, reiteró los argumentos previamente esbozados y arguyó que, tal como el TPI reconoció la procedencia del pago de los gastos de utilidades del hogar donde reside la incapaz, bajo el mismo criterio procede el pago proporcional del costo de la renta de la propiedad.

El 22 de agosto de 2025, el TPI emitió una *Orden* en la que declaró No Ha Lugar la reconsideración y aclaró que, mediante su determinación previa, había autorizado proporcionalmente el pago de ciertos gastos del hogar donde se encuentra la incapaz de los ingresos que esta recibe.[13]

Inconforme con la determinación del TPI, el 24 de septiembre de 2025, la peticionaria recurrió ante esta *Curia* mediante el recurso de *certiorari* de epígrafe en el que formuló los siguientes señalamientos de error:

> **Primer error: Erró el TPI y abusó de su discreción al denegar que fuera satisfecho el pago proporcional de vivienda de la incapaz de sus ingresos y bienes, teniendo esta la capacidad para ello; imponiendo con ello una carga injusta e innecesaria en la tutora**

> **Segundo error: Erró el TPI y abusó de su discreción al denegar que fuera satisfecho el pago reducido de cuido de la incapaz de sus ingresos y bienes, teniendo esta la capacidad para ello; imponiendo con ello una carga injusta e innecesaria en la tutora**

La peticionaria alegó que el TPI le impuso injustificadamente la obligación de asumir de sus propios ingresos los gastos de vivienda y cuido de la incapaz cuando ella, que es su madre, cuenta con bienes e ingresos para poder pagar sus propios gastos. Adujo que,

---

[12] Véase Entrada Núm. 123 del expediente digital del caso en SUMAC-TPI.
[13] Véase Entrada Núm. 124 del expediente digital del caso en SUMAC-TPI.

en virtud de las funciones conferidas, entre las que se incluyen el cuido y guarda de la incapaz, así como la administración de sus bienes, las ha ejercitado a la perfección. Y, que en un ejercicio de cautela y transparencia, ha estado pagando de su propio y personal pecunio la totalidad de los gastos de vivienda de su madre, incluyéndolos en el informe y solicitando el reembolso de estos.

Arguyó que no reclamó una remuneración por el cargo de tutora sino por el cuido a tiempo completo de la incapaz que lleva a cabo con su esposo, pues sostuvo que el cargo de tutor no implica ser necesariamente el cuidador diario del tutelado ni a tenerle en su vivienda, sino la obligación de velar que el tutelado esté cuidado y que se cubran adecuadamente sus necesidades. Por esto, señaló que el reembolso que reclama consiste en la cantidad de $300.00 por concepto proporcional de gasto de vivienda; la cantidad de $13.75 por concepto de gasto de mantenimiento; y una remuneración justa y adecuada por el cuido a tiempo completo de la incapaz por hora.

En fin, la peticionaria manifestó que entre sus obligaciones como tutora no se encuentra tener que satisfacer de su pecunio los gastos y necesidades de la incapaz cuando cuenta con los ingresos mensuales suficientes para cubrirlos. Por lo cual, solicitó que se expida el recurso, se revoque la determinación del TPI y se le autorice a pagar, conforme a los gastos proporcionales de la incapaz, las partidas de cuido y vivienda del ingreso de esta última, cantidad que según alegó es ínfima y reducida.

El 6 de octubre de 2025, la señora Lillian Negrón Soto presentó un *Memorando en oposición a expedición del certiorari.* Primeramente, arguyó que en el caso de marras no ocurren ninguna de las circunstancias reconocidas para la expedición del recurso. Sostuvo que el TPI no abusó de su discreción y, que su decisión se fundamentó en criterios de razonabilidad. Por su parte, alegó que la propia peticionaria aseveró que tenía el deseo de fungir como tutora

sin remuneración alguna y que no puede ahora actuar en contra de sus propios actos sin justa causa. Adujo además que la peticionaria no solicita un reembolso sino un pago que representa ganancia para sí. Sobre esto, manifestó que la presencia de la incapaz no produce efecto alguno en el pago de renta. Asimismo, expuso que, la remuneración que la peticionaria solicita por concepto de cuido es contraria a derecho. Esto, ya que cuantía solicitada por concepto de remuneración excede el veinte por ciento (20%) permitido por ley.

Así las cosas, solicitó que se deniegue la expedición del recurso y se le imponga el pago de una cuantía razonable por concepto de honorarios a favor de la recurrida.

En adelante, pormenorizaremos el derecho aplicable a la controversia del recurso de epígrafe.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Es en esencia un recurso extraordinario por el cual se solicita a un tribunal de mayor jerarquía la corrección de un error cometido por el tribunal inferior. supra, pág. 729. Una característica distintiva del auto de *certiorari* es que se asienta en la discreción delegada al tribunal revisor para autorizar su expedición y adjudicación. ***IG Builders et al. v. BBVAPR***, 185 DPR 307, 338 (2012). No obstante, nuestra discreción debe ejercerse de manera razonable, y siempre procurar lograr una solución justa. ***Torres Martínez v. Torres Ghigliotty***, 175 DPR 83, 98 (2008).

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob.*

*Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 59-60, 215 DPR __ (2025), establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari.*[14]

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción "es el más poderoso instrumento reservado a los jueces". ***Rodríguez v. Pérez***, 161 DPR 637, 651 (2004); ***Banco Metropolitano v. Berríos***, 110 DPR 721, 725 (1981). La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". ***Citibank et al. v. ACBI et al.***, 200 DPR 724, 735 (2018); ***García López y otro v. E.L.A.***, 185 DPR 371, 394 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". ***Citibank et al. v. ACBI et al.***, supra; ***Medina Nazario v. McNeil Healthcare LLC***, supra, pág. 729. Lo anterior "no significa poder actuar en una forma u otra, haciendo abstracción del resto del Derecho". ***Hietel v. PRTC***, 182 DPR 451, 459 (2011); ***Pueblo v. Rivera Santiago***, 176 DPR 559, 580 (2009); ***Negrón v. Srio. de Justicia***, 154 DPR 79, 91 (2001); ***Bco. Popular de P.R. v. Mun. de Aguadilla***, 144 DPR 651, 658 (1997). Ello, ciertamente, constituiría un abuso de discreción.

---

[14] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En ese sentido, el Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". *Citibank et al. v. ACBI et al.,* supra. Cónsono con ello, es norma reiterada que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto". *Citibank et al. v. ACBI et al.*, supra, pág. 736. Véase, además, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

**B.**

La tutela es aquella que le "confiere a una persona natural o jurídica la autoridad para representar y asistir a otra que, sin estar sujeta a la patria potestad, tiene restringida la capacidad de obrar por razón de su minoridad o por las causas que declara la ley". Artículo 122 de Código Civil de 2020, *supra*, sec. 5661. El propósito de esta figura es la guarda y representación de una persona incapaz y la administración de sus bienes, o solamente dicha administración, según las limitaciones que determine la sentencia y las exigencias del régimen tutelar al que queda sometida. Además, sus funciones constituyen un deber, en beneficio del tutelado y bajo la salvaguarda de la autoridad judicial. *Íd*; véase, además, Artículo 124 de Código Civil de 2020, *supra*, sec. 5663; *González Hernández v. González Hernández*, 181 DPR 746, 759 (2011).

Posterior a dictar la sentencia de incapacidad, el tribunal puede exigir del tutor que informe de forma periódica sobre la situación del incapaz y del estado de la administración de los bienes

tutelados. Artículo 118 de Código Civil del Puerto Rico de 2020, *supra*, sec. 5643.

En el ejercicio de la tutela, el tutor está obligado a:

(a) ejercer la tutela con la diligencia propia de una persona prudente y razonable que exijan las circunstancias particulares de su cargo;

(b) rendir cuentas periódicas sobre el desarrollo de su gestión en el plazo y condiciones que ordena la sentencia;

(c) alimentar y educar al tutelado, con arreglo a su condición y con estricta sujeción a las disposiciones de los progenitores o a las que, a falta de ellas, ha adoptado el tribunal;

(d) en el caso de menores de edad, corregirlos y disciplinarlos moderadamente;

(e) procurar, por cuantos medios proporciona la fortuna del incapaz, que este adquiera su plena capacidad de obrar o la recobre, se rehabilite de la dependencia o trastorno emocional o físico que lo sujeta a la tutela y logre su mejor inserción en la sociedad;

(f) dirigir y asistir a la persona que hará el inventario y el avalúo de los bienes a que se extiende la tutela, dentro del plazo que señale el tribunal; y

(g) rendir las cuentas periódicas y las finales, al terminar el cargo. Artículo 158 del Código Civil de 2020, *supra*, sec. 5723.

Asimismo, el tutor tendrá la obligación sobre el incapaz de:

(a) someterlo al tratamiento que requiere su condición;

(b) darle una carrera u oficio determinado, si ello no ha sido ordenado por los progenitores;

(c) procurar los rendimientos propios del patrimonio y colocarlos en inversiones seguras, después de cubrir las obligaciones de la tutela;

(d) proceder a la división de la herencia o de otros bienes que el tutelado posea en común con otros titulares;

(e) iniciar en nombre y en representación del tutelado toda acción legal en la que el tutor no tenga intereses encontrados; y

(f) realizar cualquier gestión que convenga al interés óptimo del tutelado y que agilice la atención de sus asuntos personales y económicos.

Estas actuaciones están sujetas a las limitaciones que la ley dispone y a las medidas de control que establezca el tribunal. En caso de duda sobre el alcance de la gestión, la actuación del tutor se entiende limitada a los actos propios de un administrador. Artículo 164 del Código Civil, *supra*, sec. 5729.

El tutor necesitará autorización judicial de forma previa y expresa para los siguientes actos:

(a) enajenar o gravar bienes inmuebles del tutelado, otorgar contratos sujetos a inscripción o de

arrendamiento de bienes inmuebles por un término mayor de seis (6) años;

(b) enajenar los bienes muebles del tutelado cuyo valor exceda los dos mil (2,000) dólares; hacer gastos extraordinarios en las fincas cuya administración comprende la tutela; o retirar de su colocación cualquier capital que produzca intereses o rendimiento periódico;

(c) alterar sustancialmente el desarrollo normal del comercio o de la industria al que hayan estado dedicados el incapaz, sus ascendientes o los del menor, o modificar sustancialmente los cursos de acción dispuestos por ellos al deferir la tutela;

(d) cobrar los créditos que le correspondan o utilizar, para su beneficio o de terceras personas, bienes y valores pertenecientes al tutelado;

(e) trasladar al tutelado fuera de Puerto Rico por cualquier período de tiempo;

(f) internar al tutelado en una institución para recibir tratamiento debido a trastornos psíquicos, si la condición no se había manifestado ni previsto al iniciarse la tutela;

(g) dar y tomar dinero a préstamo a nombre del tutelado, salvo que sea un proceso normal en los negocios bajo tutela;

(h) transigir y someter a arbitraje las cuestiones en las que el tutelado sea parte interesada;

(i) para proceder a la división de la herencia o de otra cosa que el menor o incapacitado posea en común; o

(j) para entablar demandas en nombre de los sujetos a tutela y para sostener los recursos de apelación o cualquiera otro que sea legal contra la sentencia en que hayan sido condenados.

El tutor presentará prueba de la necesidad, la utilidad y la conveniencia del acto para la persona o el patrimonio del tutelado. Artículo 165 del Código Civil de 2020, supra, sec. 5730.

Por el ejercicio de la tutela, el Artículo 170 del Código Civil, *supra*, sec. 5735, establece el derecho del tutor a recibir una remuneración. La remuneración será cobrada del patrimonio del tutelado y ésta no podrá exceder del veinte por ciento (20%) de la

rentas o productos líquidos de los bienes bajo gestión del tutor. Íd. A petición de parte, el tribunal evaluará los informes periódicos sobre el rendimiento de estos bienes para corregir la cuantía de la remuneración, si no se ajusta a los criterios utilizados para la fijación original. Íd.

Además, el Artículo 161 del Código Civil de 2020, *supra*, sec. 5726, provee para que el tutor informe al tribunal cualquier crédito que tenga contra el patrimonio del tutelado al momento de realizarse el inventario. De no hacerlo oportunamente, se entiende que lo renuncia, salvo que al tiempo del inventario no tenga conocimiento de su existencia. Íd.

**IV.**

En el caso de marras, la peticionaria, en calidad de tutora, nos solicita que revoquemos la *Orden* recurrida en la que el TPI le denegó una petición de reembolso por gastos proporcionales en los que incurre por concepto de vivienda y cuido de su madre, la señora Julia Soto Berríos. No obstante, el TPI entendió apropiado, sujeto a que sea evidenciado, el reembolso por gastos proporcionales de las utilidades de su hogar, de los fondos de la incapaz.

La peticionaria alegó que el TPI abusó de su discreción y actuó contrario a derecho al obligar a la tutora a continuar proveyendo el costo total de vivienda y cuido de la incapaz, a costa de su propio pecunio, aun cuando la incapaz cuenta con bienes e ingresos con los que puede sufragar sus necesidades.

Por su parte, la recurrida sostuvo que la determinación del TPI es correcta en derecho, toda vez que, la peticionaria había expresado que ejercería el cargo sin remuneración alguna y que la remuneración que solicita por concepto de cuido es contraria a derecho dado a que excede la cantidad permitida por ley y socava el patrimonio de la incapaz. Adujo que, excepto por los servicios de

utilidades que aprovecha, la presencia de la incapaz en la vivienda de la peticionaria no produce efecto alguno en el costo de renta.

Tras un análisis objetivo, sereno y cuidadoso del expediente y de la petición de *certiorari*, y a la luz de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que debemos expedir el auto peticionado y confirmar la determinación recurrida.

Un examen sosegado del expediente del caso ante nuestra consideración demuestra que no existe error que amerite revocar la determinación del TPI. No surge de los autos que dicho foro haya incurrido en error, prejuicio, parcialidad o abuso de su discreción, por lo que procede confirmar su determinación.

Acorde con la normativa antes citada, el tutor solicitará autorización para cobrar los créditos que le correspondan o para utilizar para su beneficio, bienes y valores pertenecientes al tutelado. Sin embargo, tendrá que presentar prueba de la necesidad, la utilidad y la conveniencia del acto para la persona o para el patrimonio del tutelado.

Adviértase, que, el TPI sí reconoció procedente que la peticionaria reclame un reembolso por los gastos de utilidades proporcional a la participación de la incapaz. También, que los gastos de la propiedad de la incapaz sean sufragados con el dinero que ésta recibe de seguro social. Ahora bien, en el contrato de arrendamiento no se detalla la cantidad de personas que vivirán la propiedad, por lo que, en este caso, la presencia de la incapaz no influye en el costo de renta que la peticionaria paga de su propio pecunio. Además, contrario a lo alegado por la peticionaria, no encontramos diferencia alguna entre una remuneración por el cargo de tutela, remuneración a la que renunció inicialmente, y un reembolso por el cuido del tutelado que propiamente lleva a cabo. Adviértase que se trata de la madre de la peticionaria.

Lo solicitado por la parte peticionaria es improcedente. La determinación del hermano foro primario es conforme a derecho y debe ser confirmada.

En relación con la súplica en torno a que impongamos honorarios de abogados y costas por temeridad, se deniega. Adviértase que existe ausencia de una determinación de temeridad por parte del TPI, tampoco encontramos que haya temeridad a nivel apelativo.

**V.**

Por los fundamentos pormenorizados, se expide el autor de certiorari y se confirma la determinación recurrida. Se devuelve el caso al TPI para que pueda continuar con los procedimientos conforme a lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones